# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

BRANDON GARRETT                                                                  PLAINTIFF

V.                                                              NO. 1:16-CV-197-DMB-DAS

CITY OF TUPELO, MISSISSIPPI                                                      DEFENDANT

## ORDER

This employment discrimination action is before the Court on the City of Tupelo's "Motion in Limine (Daubert)." Doc. #46.

## I
## Procedural History

On November 1, 2016, Brandon Garrett filed a complaint in this Court against the City of Tupelo, Mississippi. Doc. #1. The complaint alleges that Garrett suffers from hypersensitivity to mold and that the City is liable for damages under the Americans with Disabilities Act for, among other things, failing to transfer Garrett to a mold-free facility.

On November 8, 2017, following a period of discovery, the City filed a "Motion in Limine (Daubert)" seeking to exclude under Federal Rules of Evidence 702, 703, and 704, Garrett's medical records from the Maxwell Clinic. Doc. #46. Garrett responded in opposition to the motion, Doc. #50, and the City replied, Doc. #55.

After considering the filings and relevant arguments, the Court directed supplemental briefing on two issues: (1) whether the rules governing admissibility of expert opinions apply to opinions contained in business records, such as medical records, otherwise admissible under Federal Rule of Evidence 803(6); and (2) whether in light of the arguments raised in the *Daubert* motion, the challenged opinions in Garrett's medical records lack trustworthiness within the

meaning of Rule 803(6)(E). Doc. #64. The parties filed supplemental briefs as directed. Doc. #66; Doc. #67.

## II
## Analysis

The City's motion seeks to exclude Garrett's medical records from the Maxwell Clinic because the opinions contained in the records are unreliable under Rule 702's *Daubert* standard. Doc. #46 at 1. Its supplemental brief seeks exclusion of the same records as unreliable under *Daubert*, and as untrustworthy under Federal Rule of Evidence 803(6). Doc. #66 at 2, 4. In his supplemental response, Garrett states that he does not intend to submit a December 17, 2015, letter from David H. Haase, MD, which was originally included in the medical records and specifically referenced in the City's motion. Doc. #67 at 5. Garrett, however, argues that the remaining portions of the medical records are admissible. *See id*. at 1–5.

As an initial matter, the City cites no authority for the proposition that inclusion of certain inadmissible opinions renders an entire document, or collection of documents, inadmissible. To the contrary, "portions of a report, or a redacted copy of a report, may be admitted into evidence where the report contains inadmissible evidence." *Beechwood Restorative Care Ctr. v. Leeds*, 856 F.Supp.2d 580, 589 (W.D.N.Y. 2012) (collecting cases). Accordingly, even if the Court were to find the challenged opinions here to be inadmissible, the proper remedy would be exclusion of such opinions (and redaction at trial), not exclusion of the records as a whole. Therefore, the City's motion to exclude the entirety of the medical records will be denied.

Turning to the challenged opinions, references to mold in Garrett's medical records may be classified into one of four categories: (1) statements in Garrett's medical history that he was exposed to mold, *see, e.g.*, Doc. #67-1 at 3; (2) statements in Garrett's medical history that he suffers from a mold allergy or sensitivity, *see, e.g., id*. at 5; (3) assessments that Garrett was

2

exposed to mold, *see, e.g.*, *id*. at 6; and (4) diagnoses that Garrett suffered from a mold infection, *see, e.g., id*. at 11. Of these four types of references, statements in the first and second categories are not opinions and, therefore, are not implicated by the City's motion.[1] Thus, only the third and fourth categories bear discussion here as implicated by the City's motion.

### A. Admissibility Standard

Federal Rule of Evidence 803(6), which governs the admissibility of business records, provides that:

> A record of an act, event, condition, opinion, or diagnosis [are not excluded by the rule against hearsay] if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

In contrast, Federal Rule of Evidence 702, which governs opinion evidence, directs:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1] Such statements appear to be admissible as statements made for medical diagnosis or treatment. *See* Fed. R. Evid. 803(4).

3

The Fifth Circuit appears to have not addressed the interplay between Rule 702 and Rule 803(6).[2] While "most authorities take the view that a party offering a document admissible … under Rule 803(6) … need not also show, under Rule 702, the qualifications of the document's author to render any opinions in the report," this point of view is not universal. *Aumand v. Dartmouth Hitchcock Med. Ctr.*, 611 F.Supp.2d 78, 85–86 (D.N.H. 2009) (collecting authorities). Of the authorities dealing with the question, the most in-depth analysis appears in the Ninth Circuit's opinion in *United States v. Licavoli*, which held:

> In construing Rule 803(6), we bear in mind the statement of purpose and rule of construction set forth in Fed.R.Evid. 102:
>
>> These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.
>
> The focus of the business records exception to the hearsay rule is on the requirements that the record be made in the course of and as a regular practice of a regularly conducted business activity. See generally Fed.R.Evid. 803(6), Notes of Advisory Committee on Proposed Rules, Note to Paragraph (6). There are circumstantial guarantees of trustworthiness in a record contemporaneously prepared by one who acts under a business duty of care and accuracy, particularly when the business entity for which the record is made relies on it.
>
> We see no reason to adopt an inflexible rule that every case requires the proponent of a business record containing expert opinion to affirmatively establish the qualifications of the person forming the opinion. Rule 803(6) expressly provides for the exclusion of a business record if the source of information indicates a lack of trustworthiness. That provision allows the trial judge, in the exercise of his or her discretion, to exclude from evidence a record of the opinion of an expert whose qualifications are seriously challenged.

---

[2] The Fifth Circuit has held that "[i]t is undoubtedly true that the part of a hospital record containing an opinion of the attending physician … may not be admitted under the Business Records Act unless that physician is available for cross-examination." *United States v. Partin*, 493 F.2d 750, 763 (5th Cir. 1974). Although "the business records exception of [Rule] 803(6) … is very similar" to the Business Records Act, *Falcon v. Gen. Tel. Co. of the Sw.*, 626 F.2d 369, 383 n.20 (5th Cir. 1980), *vacated on other grounds*, 450 U.S. 1036 (1981), "[i]n contrast to the Business Records Act, [Rule 803(6)] specifically states that memoranda reflecting diagnoses and opinions … are admissible." *Stroud v. Roper Corp.*, No. 88-civ-1093, 1990 WL 115610, at *1 n.2 (S.D.N.Y. Aug. 9, 1990). Accordingly, the Court declines to import the absolute *Partin* rule to the business records exception.

4

604 F.2d 613, 622–23 (9th Cir. 1979).

This Court finds the *Licavoli* reasoning persuasive and holds that an opinion contained in a business record need not satisfy the independent requirements of Rule 702. Rather, the record of such an opinion will be admissible so as long as it meets the standard for admissibility under Rule 803(6).[3] In this regard, the City argues the challenged opinions are inadmissible because they are untrustworthy within the meaning of the business records exception.[4]

## B. Admissibility

Rule 803(6) makes clear that the burden of showing untrustworthiness rests on the party seeking exclusion of a document. *See* Fed. R. Evid. 803(6)(E) (proper business record admissible if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness"). To this end, the City argues generally that *Daubert* standards should inform the Rule 803(6) analysis and, more specifically, that:

> the analysis and opinions offered by Defendant's expert explaining the complete lack of supporting methodology, reliability, and relevance underlying Dr. Haase's opinion that Garrett suffers from a "genetic propensity" to mold "sensitivity," establishes the inherent lack of trustworthiness of the records and Dr. Haase's opinions.

Doc. #66 at 4. These arguments appear to relate only to Haase's December 2015 letter, which Garrett has withdrawn,[5] and not to the remaining references to "mold infections" or mold exposure.

---

[3] Of course, such evidence would also be subject to a Rule 403 balancing inquiry. *See, e.g.*, *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 983 (5th Cir. 1986) (hospital records improperly admitted when "their prejudicial impact manifestly outweighed the benefit of" admission). The City does not seek exclusion under Rule 403, and the Court declines to raise the issue sua sponte.

[4] In reaching this conclusion, the Court acknowledges that at least one district judge in this state has applied the *Daubert* standard to an opinion found in a medical record. *See Harris v. Brush Wellman Inc.*, No. 1:04-cv-598, 2007 WL 4200828, at *2 (S.D. Miss. Nov. 27, 2007) ("The references in Plaintiff's medical records to Dr. Harber's opinion suggesting a 'possible' diagnosis of CBD do not meet the criteria set forth in *Daubert* …."). To the extent the cited opinion did not address either Rule 803(6) or the conflict in authorities described above, the Court finds it unpersuasive.

[5] Doc. #67 at 5.

Insofar as the City's original motion contains no specific challenge to the statements that Garrett was exposed to mold, it has provided no basis to challenge the trustworthiness of such an opinion. However, to the extent the City appears to argue that *Daubert* warrants exclusion under Rule 803(6), and raised specific arguments as the reliability of the opinions of "mold infection," the Court will consider such arguments now.

With regard to the findings of mold infections, the City points to the report of its expert, Robert Cox, MD, Ph.D., who opined:

> **Mr. Garrett had recurrent rhinosinusitis or chronic rhinosinusitis between February 2014 and March 2015. There is no evidence that he had a fungal infection or fungal colonization**. He was treated with typical antibiotics. There was no mention of nasal polyps in any of his exams. The exam documentation does not meet the criteria for chronic rhinosinusitis. He had negative allergy testing for fungi, arguing against allergic fungal rhinosinusitis. He also had CT scanning that was normal, arguing against chronic rhinosinusitis, fungal colonization or invasive fungal disease of his sinuses. …
>
> **Mr. Garrett stated that the water leak in his building occurred in 2014 and he was moved out of this building in April 2015. Damp indoor environments have been associated with upper respiratory symptoms and infections but multiple groups have concluded that there is not sufficient data to conclude that they cause upper respiratory symptoms or infections.** I do not have any information on the severity of the water leak or how much time Mr. Garrett spent in the building. It is possible that this could have exacerbated Mr. Garrett's sinus condition. However, cigarette smoking is also a risk factor for acute and chronic rhinosinusitis. Either factor or both could have exacerbated his condition.

Doc. #46-2 at 21–22 (paragraph numbering omitted).

While authority on the trustworthiness of medical opinions is scarce, courts have found medical opinions to be untrustworthy under Rule 803(6) when the information in the opinion came from the patient, rather than the doctor,[6] and when the source of the information is unknown.[7] *See* 2 MCCORMICK ON EVID. § 293 (7th ed.) ("[W]here indications of lack of trustworthiness are

---

[6] *Petrocelli v. Gallison*, 679 F.2d 286, 290–91 (1st Cir. 1982).

[7] *Ricciardi v. Children's Hosp. Med. Ctr.*, 811 F.2d 18, 23 (1st Cir. 1987).

shown, which may result from a lack of expert qualifications or from a lack of factual support, exclusion is warranted."). Here, there is simply no evidence how or why Garrett was diagnosed with a fungal infection. This fact, combined with Cox's unopposed assertions regarding the dearth of available medical evidence supporting the conclusion, convinces the Court that the opinions that Garrett suffered from a fungal infection are untrustworthy within the meaning of Rule 803(6) and are properly excluded.[8]

### III
### Conclusion

For the reasons above, the City's *Daubert* motion [46] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks exclusion of statements in the Maxwell Clinic medical records that Garrett suffered from a fungal infection. The motion is DENIED in all other respects.

**SO ORDERED**, this 14th day of June, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[8] Should this matter proceed to trial, the parties are directed to work together to ensure reference to fungal infections in the medical records are properly redacted, to the extent the portions of the medical records containing such references are intended to be offered into evidence.